UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TORMENTED SOULS, INC.,

                        Plaintiff,                     **REPORT AND
RECOMMENDATION**

       -against-                           CV 09-1743 (DRH)(ARL)

TORMENTED SOULS MOTORCYCLE CLUB
INC. and JOSEPH FALCONE,

                        Defendants.
-------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Before the court, on referral from District Judge Denis R. Hurley, is the plaintiff

Tormented Souls, Inc.'s ("plaintiff") motion for an award of sanctions against defendants

Tormented Souls Motorcycle Club Inc. (the "corporate defendant")[1] and defendant Joseph

Falcone ("defendant "Falcone")[2] (collectively the "defendants") based on the defendants' alleged

---

[1]By Order dated May 17, 2011, the district judge granted defendants' attorney's motion to withdraw as counsel for defendants and stayed this matter for a period of thirty (30) days to allow the corporate defendant to retain new counsel.  (*Order*, dated May 17, 2011.)  To date, however, no attorney has been retained to represent the corporate defendant nor has the corporate defendant sought additional time to retain new counsel.  "Because a corporation cannot proceed *pro se*, a corporate defendant's failure to obtain counsel is a failure to otherwise defend under Rule 55(a)."  *Maersk Line v. Phoenix Agro-Industrial Corp.*, No. CV-07-3169 (SJF) (JMA), 2009 WL 1505281, at *2 (E.D.N.Y. May 27, 2009) (internal quotation marks and citations omitted); *see Securities and Exchange Comm'n v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975).  Accordingly, plaintiff's motion for an award of sanctions against the corporate defendant will, as consistent with this report and recommendation, be granted as unopposed.

[2]In addition, District Judge Hurley referred the issue of whether or not the sanctions proceeding against defendant Falcone is precluded by an automatic stay pursuant to 11 U.S.C. § 362 of the Bankruptcy Code in light of defendant Falcone's having filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Eastern District of New York  on August 6, 2010. However, a review of the docket report of the United States Bankruptcy Court indicates that upon application of Mr. Falcone, the Chapter 13 case was dismissed by Order dated October 4, 2011 and the case was closed by Order dated November 11, 2011.  (*In re Joseph Paul Falcone,* Case

failure to comply with certain obligations set forth in the parties' "Stipulation and Order for Permanent Injunction" and "Addendum to Stipulation and Order for Permanent Injunction," both of which were "So Ordered" by the Court on April 27, 2010 (collectively the "Settlement Agreement" or "Agreement").[3]  (*See* Docket Nos. 39, 40.)   For the reasons that follow, the undersigned reports and recommends that plaintiff's motion be granted, in part, and denied, in part, and that plaintiff be awarded sanctions against defendants in the amount of $1,000.

## BACKGROUND

The Settlement Agreement at issue embodies the agreements of the parties terminating the trademark infringement action commenced in this court on April 29, 2009 under the above-referenced docket number.  In this action, plaintiff alleged principally that defendants used plaintiff's protected trademark and the designation "Tormented Souls" in connection with defendants' business, including but not limited to the manufacture, distribution and sale of goods and services in violation of the Lanham Act, 15 U.S.C. § 1051 et seq. and New York statutory and common law.  (Compl., filed April 29, 2009.)  The Settlement Agreement was signed by all parties and so ordered by the Court on April 27, 2010.  On the following day, the Court dismissed the case without prejudice pursuant to the Permanent Injunction Order and stipulations placed on

No. 8-10-76209 (AST), Dkt. Entry Nos. 29, 33, 37.)  Accordingly, the dismissal of the underlying bankruptcy proceeding renders the issue of the automatic stay provision moot.  *Cf. In re Walerstein*, No. 07-CV-2746 (JS), 2008 WL 795327, at *2 (E.D.N.Y. Mar. 24, 2008) (holding that "[p]ursuant to Section 362, any automatic stay would have terminated upon dismissal of the case").

[3]The Addendum to Stipulation and Order for Permanent Injunction provides that the "Addendum shall be made part of the Stipulation and Order for Permanent Injunction and shall be construed to be one and the same instrument."  (Addendum to Stipulation and Order for Permanent Injunction, dated April 27, 2011.)

the record on April 27, 2010, and the case was closed.  (Order, dated April 28, 2010.)

The Settlement Agreement provides in pertinent part:

2.   Defendants, and those persons in active concert or participation with them, including, but not limited to Defendants' affiliated chapters and members in Nevada, Nomad, New York, Indiana, Florida, Michigan and Illinois, who receive actual notice of this Order, by personal service, facsimile, or otherwise, are hereby permanently enjoined and restrained from using the name, mark, or designation "Tormented Souls", or any name or mark confusingly similar to the name, style, logo of Plaintiff, including but not limited to "Tortured Souls", in connection with identifying any business or entity in the United States of America, or in any other country.

3.   The defendants, and all affiliated chapters and members, shall take all the steps necessary to remove all advertisements, promotional publications, internet website, and other media wherein the public would encounter or view the use of the "Tormented Soul" mark.

4.   Defendants, and those persons in active concert or participation with them . . . shall further remove labels containing the term or name "Tormented Souls" or any variation thereof that are sewn into or otherwise attached to inventories or garments currently in possession of the Defendants or those persons in active concert or participation with them.

5.   The Defendants shall provide Piken & Associates P.C., with an Affidavit of Compliance stating that said patches, styles, logos, etc., have been physically removed from all garments and inventories, and they shall issue a directive to all members and affiliates that there is a Federal Court Order precluding anyone from wearing a jacket or garment with the name, style and logo of "Tormented Souls". Defendants shall further obtain from all affiliated chapters nationwide the same affidavit and provide Piken & Associates with an Affidavit from each chapter with the name and address of each member.

*       *       *       *       *       *       *       *       *       *       *

7.   Defendants and all affiliated chapters will provide an affidavit that they consent to the jurisdiction of this Court, the United States District Court, Eastern District of New York, for the chapter and all of its members with names and addresses attached of each member.  The preliminary injunction shall take effect immediately and shall become a permanent injunction forthwith on notice of Order of Entry.

8.   Any unused or undistributed patches, decals, insignias of any kind bearing the

3

name, style and logo of plaintiff shall be forwarded to plaintiff's counsel's office
forthwith.

9.    Defendants, Tormented Souls Motorcycle Club Inc., a.k.a., Tormented Souls MC,
and Joseph Falcone, shall provide[] an additional affidavit that no garments of any
kind have been sold as so represented to this Court bearing the name, style and
logo of Plaintiff.

    *       *       *       *       *       *       *       *       *       *       *

12.    Defendants shall place upon its website forthwith a disclaimer stating that it has
changed its name; that the "domain" shall be surrendered to plaintiff, and that it is
not affiliated in any way with Tormented Souls.  Said disclaimer shall continue for
a period of five (5) years, however, plaintiff is free to extend the need for this
disclaimer upon proper presentation of proof to the Court.

(Stipulation and Order for Permanent Injunction, ¶¶ 2-5, 8-9, 12.)  The parties agreed to dismiss

the action, but provided in the Settlement Agreement that:

In the event plaintiff's counsel determines that there has been a violation, a notice
shall be forwarded to said violator by Certified Mail Return Receipt Requested and
First Class mail, providing a period of ten (10) days to cure the violation.  If said
violation is not cured and sufficient proof is provided to this Court that said
violation has not been cured, the Court does hereby impose a sanction by letter
notice of $500.00 for each and every violation.  Said sanction shall be payable to
Piken & Associates P.C., representing reasonable attorney's fees and sanctions.
Should said sanction not be paid, then plaintiff may file any appropriate Motion for
Contempt on notice for violation of a Court order as well as any and all violations
constituting egregious conduct pursuant to the Lanham Act. . . .

(*Id*. at ¶ 11.)  The Agreement further provides that:

The Court retains jurisdiction over this Stipulation and Order for Permanent
Injunction and any applications with regard to enforcement of this Stipulation and
Order for Permanent Injunction shall be directed to this Court.

(*Id*. at ¶ 14.)

Nearly five months after the case was closed, on September 17, 2010, plaintiff moved this

Court to enforce the Settlement Agreement by imposing sanctions against the defendants for their

failure to comply with certain provisions of the Agreement.  The district court directed defendants to submit a written response to the motion, and despite having counsel of record, defendant Falcone, proceeding *pro se*, filed an opposition letter dated September 20, 2010 wherein he advised the Court, *inter alia*, that he was involved in bankruptcy proceedings.  Thereafter, the district court directed defense counsel to inform the Court whether and to what extent either defendant was currently involved in bankruptcy proceedings as indicated in defendant Falcone's September 20, 2010 letter and ordered that any further communications to the Court on behalf of the defendants  be submitted solely through defendants' attorney of record.  (Order, dated February 2, 2011.)

On February 8, 2011, defense counsel sought leave to withdraw as counsel and informed the Court that according to the Bankruptcy Court records defendant Falcone had filed for Chapter 13 bankruptcy on August 6, 2010 but that there was no record that the corporate defendant had filed bankruptcy.  (*Williams Letter*, dated February 8, 2011.)  By Order dated March 4, 2011, the district court directed that plaintiff's motion for sanctions and any obligation of defendants to provide a substantive response thereto be held in abeyance pending the Court's review and resolution of defense counsel's application to withdraw as counsel.  (Order, dated March 4, 2011.)  The Court granted defense counsel's application to withdraw on May 17, 2011, stayed the matter for thirty days to allow the corporate defendant to retain new counsel and referred plaintiff's motion for an award of sanctions against defendants to the undersigned with the specific instruction that the entire matter was stayed for thirty days.  (Order, dated May 17, 2011.)  Neither defendant has retained new counsel.  Plaintiff now moves to enforce the Settlement Agreement by imposing sanctions (as are specifically provided for in the Agreement) against the defendants for

their failure to comply with certain provisions of the Agreement.  Defendant Falcone, proceeding *pro se*, opposes the motion.  As discussed *supra*, with respect to the motion against the corporate defendant, the motion will be treated as unopposed.

## DISCUSSION

Federal courts are courts of limited jurisdiction, and the Supreme Court has made clear that the enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 378 (1994).  "In the absence of . . . an independent basis for jurisdiction, a federal court has jurisdiction to enforce a settlement agreement only if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement." *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996); *see Supervalu Inc. v. Ectaco Inc.*, No. 10-CV-5267 (RLM), 2011 WL 3625567, at *1 (E.D.N.Y. Aug. 12, 2011) (holding "a federal court lacks jurisdiction to enforce a settlement agreement in a closed case in the absence of an independent basis for jurisdiction or a dismissal order specifically reserving such authority"). "Absent such action . . . enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."  *Kokkonen,* 511 U.S. at 382.  Thus, where, as here, the settlement agreement contains a specific provision whereby the court retains jurisdiction over the settlement agreement and the dismissal order incorporates the terms of the agreement, the court has subject matter jurisdiction to enforce the parties' settlement agreement.  *Id.*; *see Gesualdi v. PAV-CO Asphalt, Inc.*, No. 09-CV-2503 (ARR), 2011 WL 2433731, at *2 (E.D.N.Y. May 23, 2011) ("A district court is empowered to enforce a settlement where it has reserved jurisdiction over the agreement by incorporating into an order of the court").  In such circumstances, "a breach of the agreement would be a violation of the order, and ancillary

6

jurisdiction to enforce the agreement would therefore exist." *Wynn v. Wegmans Food Markets,* No. 96-CV-6307L (DGL), 2007 WL 2994227, at * 3 (W.D.N.Y. Oct. 11, 2007) (internal quotation marks anc citation omitted).

In the case at hand, the Court expressly retained jurisdiction for the purpose of enforcing the Settlement Agreement pursuant to paragraph 14 of the "so ordered" Settlement Agreement which states that the Court shall retain jurisdiction over the matter for the purpose of enforcing the settlement terms.  (Stipulation and Order for Permanent Injunction, ¶ 14.)  In addition, the dismissal order specifically incorporates the Settlement Agreement by reference.  (Order, dated April 28, 2010.)  Accordingly, this Court has jurisdiction to enforce the Settlement Agreement and to address plaintiff's motion for sanctions based on the alleged breach of the Agreement.

It is well-settled that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999); *see Gesualdi v. PAV-CO Asphalt, Inc.*, 2011 WL 2433731, at *2 (same); *see also Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005) (same).  "Once entered into, the contract is binding and conclusive."[4]  *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) (citation omitted).  "A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and unambiguous."  *Omega Engineering, Inc.*, 432 F.3d at 444 (internal quotation marks and citation omitted).  Finally, "if the agreement is knowing and voluntary, the *pro se* status of the litigant

---

[4]In *Powell*, the Second Circuit noted that "[i]t is unclear whether the settlement of federal claims is governed by New York law or federal common law."  497 F.3d at 129 n.1.  However, the Second Circuit concluded that it need not resolve that issue because New York law and federal common law were not materially different and, thus, New York law and federal common law could be applied "interchangeably" in this context.  *Id.*

does not allow the litigant to escape from the terms of the valid agreement." *Duff v. Commissioner Suffolk County Police Dept.*, No. 04-CV-1568 (JFB) (MLO), 2007 WL 4373444, at *3 (E.D.N.Y. Dec. 10, 2007).

Here, it is undisputed that the parties, all of whom at the time of the Settlement Agreement were represented by counsel, agreed to the terms of the settlement and evidenced their intent to be bound by the agreement.  The Agreement released defendants from any trademark infringement claims under the Lanham Act and related state law claims, and in exchange defendants agreed to enter into a permanent injunction and comply with certain enumerated requirements.  A review of the record, including the parties' respective submissions in connection with plaintiff's motion, reveals that defendants' compliance with the Settlement Agreement, however, was somewhat less than punctilious.  Specifically, plaintiff asserts that defendants have failed to comply with the following provisions set forth in the Settlement Agreement:  the failure to (i) provide plaintiff's counsel with the name and address of each member of its Motorcycle Club; (ii) remove all patches, decals, and insignias of any kind bearing the name, style and logo of plaintiff and forward the same to plaintiff's counsel; and (iii) submit an affidavit from defendants stating that no garments of any kind have been sold bearing the name, style and logo of plaintiff to plaintiff's counsel.  Plaintiff moves for sanctions against defendants for these alleged violations pursuant to paragraphs 11 and 14 of the Settlement Agreement.  Each alleged violation of the Agreement will be addressed in turn.

 **(i)**  **Name and address of each member of the Tormented Souls Motorcycle Club**

The parties stipulated and agreed pursuant to paragraphs 5 and 7 of the Settlement Agreement that defendants would provide plaintiff's counsel, Piken & Associates, P.C. with an affidavit that defendants and all affiliated chapters consent to the jurisdiction of this Court and a

list of the name and address of each member of the Tormented Souls Motorcycle Club attached. As a preliminary matter, the undersigned finds the obligations imposed on the parties by paragraph 5 and 7 are both clear and unambiguous. *Cf. New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) ("a court order is clear and unambiguous when it is specific and definite enough to apprise those within its scope of the conduct that is being proscribed") (internal quotation marks and citation omitted). In its submissions, plaintiff avers that although defendant Falcone initially indicated that there were 73 members of his club, he submitted a club roster list which contained the names and addresses of only nineteen (19) members. (*Piken Letter*, dated September 17, 2010, Ex. B.) Moreover, plaintiff asserts that Mark Pressler and Glen Talbot, whose signatures appear on the Affidavit of Compliance in this matter, and who are the alleged heads of the Florida and Illinois Chapters of the Club respectively, were excluded from the club roster list provided to plaintiff's counsel. (*Id.*, Exs. B, C.) Plaintiff sent numerous letters to defendants advising them of their default and giving them an opportunity to cure. (*Id.*, Ex. D.) However, plaintiff maintains defendants have failed to cure their default and now seeks sanctions in the amount of $27,000, representing a sanction of $500 for each of the 54 missing club members' names and addresses.

In response, defendant Falcone explains that at the time this action was commenced in April 2009, his club had between fifty (50) and seventy-three (73) members. (Falcone Letter, dated September 20, 2010.) However, on the date the parties executed the Settlement Agreement in April 2010, his club had only twenty-one (21) members nationwide, having lost many members over "the need to raise funds to hire legal counsel in regard to this case." (*Id.*) Defendant Falcone states that he had provided the names and addresses of nineteen (19) members, but concedes that he had excluded two names, to wit, Glen Talbot and Mark Pressler, in error. (*Id.*)

9

Thus, it is undisputed that defendants failed to submit the names and addresses of two club members.

Pursuant to the clear and unambiguous terms of paragraph 11 of the Settlement Agreement, because sufficient proof has been provided to the Court that defendants have not cured their violation with respect to these two individuals, plaintiff is entitled to an award of $500 for each and every violation, payable to Piken & Associates, P.C., representing reasonable attorney's fees and sanctions.  Accordingly, the undersigned recommends that plaintiff be awarded sanctions against defendants in the amount of $1000, consisting of a $500 sanction imposed for each of the two missing club members' names and addresses.

**(ii)   Removal of patches, decals and insignias bearing plaintiff's logo and forward same to plaintiff's counsel**

Plaintiff contends that pursuant to the Settlement Agreement, defendants were required to remove all patches, decals and insignias of any kind bearing the name, style and logo of plaintiff and forward the same to plaintiff's counsel.  To date, plaintiff asserts that it has received only fifteen (15) patches from defendants, despite defendants having had at least nineteen (19) members and as many as seventy-three (73) members, and therefore claims, without referencing a specific provision, that defendants are in violation of the Agreement.

A review of the clear and unambiguous terms of the Settlement Agreement indicates that the pertinent provisions addressing such removal requires that defendants (i) "remove labels containing the term or name 'Tormented Souls' or any variation thereof that are sewn into or otherwise attached to inventories or garments currently in the possession of the [d]efendants or those persons in active concert or participation with them," (Stipulation and Order for Permanent Injunction, dated April 27, 2010, ¶ 4); and (ii) "shall provide Piken & Associates P.C. with an

Affidavit of Compliance stating that said patches, styles, logos, etc., have been physically

removed from all garments and inventories, and they shall issue a directive to all members and

affiliates that there is a Federal Court Order precluding anyone from wearing a jacket or garment

with the name, style and logo of 'Tormented Souls'," (*id*. at ¶ 5).  Nowhere in the Agreement is

there a requirement that upon the removal of the patches, styles and logos, defendants were

required to forward them to plaintiff's counsel.  Although paragraph 8 of the Settlement

Agreement provides that, "Any unused or undistributed patches, decals and insignias of any kind

bearing the name, style and logo of plaintiff shall be forwarded to plaintiff's counsel's office

forthwith," (*id*. at ¶ 5), a fair reading of this unambiguous provision does not support an inference

that defendants were also required to forward the items that had been physically removed from all

garments and inventory.  Accordingly, having found no violation of the Settlement Agreement

with respect to the alleged failure to forward to plaintiff's counsel all removed patches, decals and

insignias bearing the name, style and logo of plaintiff, the undersigned recommends that

plaintiff's motion for an award of sanctions on this basis be denied.

**(iii)   Affidavit stating no garments have been sold bearing the name, style and logo of plaintiff**

Plaintiffs assert that defendants failed to provide plaintiff's counsel with a signed

notarized affidavit stating that no garments of any kind have been sold bearing the name, style and

logo of plaintiff as required pursuant to paragraph 9 of the Settlement Agreement.  (*Piken Letters*,

dated September 17, 2010 and October 6, 2010.)  Plaintiff further avers that numerous letters were

sent to defendants advising them of their default and giving them an opportunity to cure.  (*Id*., Ex.

D.)  Plaintiff's reliance on the letters of notice proffered to the Court in connection with this

11

alleged violation is misplaced.

Pursuant to paragraph 11 of the Settlement Agreement, the parties agreed that in the event that plaintiff's counsel determines there has been a violation, "a notice shall be forwarded to said violator by Certified Mail Return Receipt Requested and First Class Mail, providing a period of ten (10) days to cure the violation." (*Id*., Ex. A, ¶ 11.)  A review of each of the four notice letters dated June 4, 2010, July 1, 2010, July 27, 2010 and July 11, 2010 to defendants, however, fails to reveal that any notice of the alleged default was given to defendants by the correspondence.  That is to say, nowhere in any of the letters is there notice of either a violation of paragraph 9 of the Agreement or that defendants failed to provide "an additional affidavit that no garments of any kind have been sold as so represented to this Court bearing the name, style and logo of Plaintiff." (*Id*., Exs. A, D.)  Accordingly, the undersigned recommends that plaintiff's motion for an award of sanctions on this basis be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for plaintiff by electronic filing on the date below.  Plaintiff is directed to serve a copy of this Report and Recommendation on the defendants by certified mail at their last known addresses, return receipt requested, and to electronically file proof of service on ECF forthwith.  Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Ferrer v. Woliver,* 05-CV-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997);

12

*Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        February 7, 2012

                                    _____/s/_____
                                    Arlene R. Lindsay
                                    United States Magistrate Judge

13